IN MANDAMUS DECISION
Fred Hutchins filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to adjust the starting date for his permanent total disability ("PTD") c ompensation.
In accord with Loc.R. 12(M), the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and file briefs. The magistrate then issued magistrate's decision which includes a recommendation t hat we refuse the requested relief. (Attached as Appendix A.)
No one has filed objections to the magistrate's decision. The c ase is now before the court for review.
No error of law or fact is present on the fact of the magistrate's decision. We, therefore, adopt the findings of fact and conclusions of law contained in the magistrate's decision and d eny the requested writ.
Writ denied.
DESHLER and PETREE, JJ., concur.
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS
Relator, Fred Hutchins, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its April 30, 2001 order which denied his motion to readjust the start date for his receipt of permanent total disability ("PTD") compensation, so that it would start October 7, 1996.
Findings of Fact:
1. Relator has sustained several work related injuries and his claims have been allowed as follows: "[C]laim RL 208 has been allowed for: Aggravation of pre-existing lumbar disc displacement right side; aggravation of pre-existing low back injury; and for lumbar disc displacement left side. * * * [C]laim 79-30040 has been allowed for: Lower back and injury to right side, histidase nucleus pulpous L4-5. * * * [C]laim 85-7789 has been allowed for: Left shoulder brachial plexus syndrome. * * * [C]laim 85-52412 has been allowed for: Pulled muscle rib cage."
2. On March 25, 1998, relator filed an application for PTD compensation.
3. Relator submitted the November 14, 1997 report of Raymond J. Tesner, D.O., which provided, in pertinent part, as follows:
 * * * Fred has been under my care for quite some time for chronic low back pain with radicular symptoms on both legs. I do feel at this point in time that he is permanently and totally disabled due to his industrial injury as you know. He has been under my care for quite a bit of time. He is in chronic pain and we have been unable to relieve it. We have sent him to several surgical specialists, both Neurologist and Neurosurgeon and Orthopedic back specialist and every one feels that there is no further surgery that can be done on him. He has had multiple surgical procedures done in the past. At this time his symptoms are controlled with activity modification, that includes no work as well as pain medication and home exercises. Due to the longstanding nature of his problems and the multiple surgeries that has [sic] been done, the fact that he has no operative options available to him and he continues to be debilitated with discomfort, I see no significant improvement in the future. The prognosis is poor and again I reiterate that [sic] the fact that he is totally and permanently disabled.
4. Relator also submitted the March 16, 1998 questionnaire completed by Dr. Jerry Guy who indicated that relator is unable to engage in sustained remunerative employment and is permanently and totally disabled.
5. Relator's application was heard before a staff hearing officer ("SHO") on October 20, 1999, and resulted in an order granting him the requested compensation based particularly upon the reports of Drs. Tesner, Guy and Chapman, a commission psychologist. The SHO determined that the start date for the payment of PTD com-pensation was November 14, 1997, the date of Dr. Tesner's report wherein he indicated that relator was permanently and totally disabled.
6. On January 16, 2001, relator filed a motion seeking to have the commencement date for his PTD benefits changed to March 25, 1996, two years prior to the filing of this application for PTD compensation. Relator did not submit any additional medical evidence at that time.
7. Relator's motion was heard before an SHO on April 30, 2001, and resulted in an order denying the request as follows:
 The motion to readjust the Permanent Total Disability start date is denied, as there is no medical evidence on file dated prior to 11/14/1997, the date that the Permanent Total Disability award was previously started, which can be relied on pursuant to the provisions of the administrative rule, OAC 4121-3-34(C)(1), to grant an earlier start date. The administrative rule requires such medical evidence to provide an opinion that addresses the claimant's inability to work. Thus a diagnostic test report can not qualify under the administrative rule as it does not provide such an opinion. Also pursuant to O.R.C. 4123.52 the start date cannot be more than two years prior to the date of filing of the Permanent Total Disability application. Furthermore, pursuant to Zamora v. I.C., any medical reports on file as of the date of the prior application's denial, i.e. 02/25/1994, cannot be considered. Thus the Permanent Total Disability start date must remain at 11/14/1997 based on the report of Dr. Tesner of that date.
8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
Relator contends that the commission's order refusing to adjust the commencement date for his PTD compensation does not explain why the date of Dr. Tesner's report should be used when the medical evidence in the record shows that relator was suffering from the medical problems detected by Dr. Tesner long before the date of his report. Relator contends that the commission abused its discretion by relying on Ohio Adm. Code 4121-3-34(C)(1) as requiring medical evidence providing an opinion that addresses the claimant's inability to work. For the reasons that follow, this magistrate finds that relator has not shown that he is entitled to a writ of mandamus.
Ohio Adm. Code 4121-3-34(C)(1) provides, in pertinent part, as follows:
 Each application for permanent total disability shall be accompanied by medical evidence from a physician * * *, that supports an application for permanent and total disability compensation. The medical examination upon which the report is based must be performed within fifteen months prior to the date of filing of the application for permanent and total disability compensation. The medical evidence used to support an application for permanent total disability compensation is to provide an opinion that addresses the claimant's inability to work (for example, the claimant will never be able to return to his former position of employment, or will never return to work) resulting from the allowed conditions in the claim(s). * * * If the application for permanent total disability is filed without the required medical evidence, it shall be dismissed without hearing.
Ohio Adm. Code 4121-3-34(D)(3) provides the following relevant factors to be considered in the adjudication of all applications for permanent total disability:
 (a) The burden of proof shall be on the claimant to establish a case of permanent and total disability. The burden of proof is by preponderance of the evidence. The claimant must establish that the disability is permanent and that the inability to work is causally related to the allowed conditions.
 (b) In adjudicating an application for permanent and total disability, the adjudicator must determine that the disability is permanent, the inability to work is due to the allowed conditions in the claim, and the claimant is not capable of sustained remunerative employment.
 (c) The industrial commission has the exclusive authority to determine disputed facts, the weight of the evidence, and credibility.
 (d) All medical evidence of impairment shall be based on objective findings reasonably demonstrable and medical reports that are submitted shall be in conformity with the industrial commission medical examination manual.
As is apparent from the above cited provisions, the burden is on claimant to submit evidence showing that the disability is permanent, that the inability to work is due to the allowed condition(s) in the claim, and that claimant is not capable of performing sustained remunerative employment. Relator contends that the diagnostic tests which were performed prior to Dr. Tesner's report constitute some evidence that he was permanently and totally disabled as of the date those tests were taken. However, this magistrate finds that, while the diagnostic tests indicate that relator suffered from certain conditions, until such time as he was evaluated by Dr. Tesner, there was no evidence in the file that relator was permanently and totally disabled as a result of those allowed conditions. As Dr. Tesner's November 14, 1997 report makes clear, he had been treating relator for some time. However, the record before this court indicates that it was not until November 14, 1997 that Dr. Tesner opined that relator was permanently and totally disabled. Because Dr. Tesner's report is the first credible evidence that relator is permanently and totally disabled as a result of the allowed conditions in the claims, relator has not demonstrated that the commission abused its discretion by relying on the date of that report as the commencement date for the payment of his PTD compensation.
Based on the foregoing, it is the magistrate's decision that relator has not demonstrated the commission abused its discretion by denying his motion to readjust the start date of his PTD compensation and relator's request for a writ of mandamus should be denied.
 STEPHANIE BISCA BROOKS MAGISTRATE