[Cite as *State ex rel. Torrence v. Union Metal Industries*, 2024-Ohio-5222.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Renard M. Torrence, | : | |
| Relator, | : | No.  23AP-224 |
| v. | : | (REGULAR CALENDAR) |
| Union Metal Industries et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on October 31, 2024

**On brief:** *Nager, Romaine & Schneiber Co., L.P.A.*, and *Leah Vanderkaay*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Denise A. Corea*, for respondent Industrial Commission of Ohio.

**On brief:** *Daniel M. Hall, LLC*, and *Daniel M. Hall*, for respondent Union Metal Industries.

IN MANDAMUS

LUPER SCHUSTER, J.

{¶ 1}  Relator, Renard M. Torrence ("claimant"), initiated this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his request for temporary total disability ("TTD") compensation.

{¶ 2}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate.  The magistrate issued the appended decision, including findings of fact and conclusions of law.  The magistrate determined that claimant has failed to demonstrate a clear legal right to relief or a clear

legal duty on the part of the commission to provide such relief. Thus, the magistrate recommends this court deny claimant's petition for a writ of mandamus.

{¶ 3} No party has filed objections to the magistrate's decision. "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c). The case is now before this court for review.

{¶ 4} Upon review, we find no error of law or other defect on the face of the magistrate's decision. Therefore, we adopt the magistrate's decision as our own, including findings of fact and conclusions of law, and we deny claimant's petition for a writ of mandamus.

*Writ of mandamus denied.*

MENTEL, P.J., and BEATTY BLUNT, J., concur.

———————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Renard M. Torrence, | : | |
| Relator, | : | |
| v. | : | No. 23AP-224 |
| | : | (REGULAR CALENDAR) |
| Union Metal Industries et al., | : | |
| Respondents. | : | |
| | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 28, 2024

---

*Nager, Romaine & Schneiber Co., L.P.A.*, and *Leah Vanderkaay*, for relator.

*Dave Yost*, Attorney General, and *Denise A. Corea*, for respondent Industrial Commission of Ohio.

*Daniel M. Hall, LLC*, and *Daniel M. Hall*, for respondent Union Metal Industries.

---

IN MANDAMUS

{¶ 5} Relator, Renard M. Torrence ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied his request for temporary total disability ("TTD") compensation.

Findings of Fact:

{¶ 6}   1. On August 2, 2022, claimant sustained an injury in the course of and arising out of his employment with respondent Union Metal Industries ("employer") when a chair he was sitting in collapsed, and he fell to the ground. His workers' compensation claim was allowed for traumatic complete rotator cuff tear right.

{¶ 7}   2. Claimant returned to work after a one-week vacation and continued to work until he was terminated from his employment due to an argument with a coworker about the broken chair. There is nothing in the record indicating how long claimant had returned to work before he was terminated or providing details of the argument or termination process. There are also no transcripts from any proceedings before the commission that might explain the circumstances surrounding the argument and subsequent termination.

{¶ 8}   3. On August 25, 2022, claimant sought treatment with Thomas Krupco, M.D., who did not place any restrictions on claimant's work at that time. Claimant treated with Dr. Krupco on September 29 and November 4, 2022, and Dr. Krupco did not place any restrictions on claimant's work at these times.

{¶ 9}   4. On October 4, 2022, the Bureau of Workers' Compensation ("BWC") denied claimant's claim. Claimant appealed.

{¶ 10} 5. On November 1, 2022, claimant had an MRI on his right shoulder, which generally revealed a rotator cuff tear.

{¶ 11} 6. On November 18, 2022, Dr. Krupco issued a MEDCO-14 Physician's Report of Work Ability, placing claimant on work restrictions from August 25, 2022, and continuing to November 7, 2022. The form indicates claimant was "off work" from those dates.

{¶ 12} 7. On November 26, 2022, a district hearing officer ("DHO") denied claimant's claim, acknowledging Dr. Krupco's medical reports and the MRI of the right shoulder, but finding there existed no persuasive medical opinion in such records to support the claim that the traumatic complete tear of the rotator cuff right shoulder was sustained as a direct and proximate result of the industrial accident. Claimant appealed.

{¶ 13} 8. On January 25, 2023, a Staff Hearing Officer ("SHO") held a hearing. In a January 25, 2023, decision, the SHO found the following: (1) the claim is allowed for the condition of traumatic complete rotator cuff tear right; (2) TTD compensation is denied from August 25 through November 7, 2022, inclusive; (3) claimant was not working due to reasons other than this claim; (4) claimant stated at the hearing that he worked following the injury until he was terminated for an argument with a coworker; and (5) accordingly, the reason claimant went off work was termination following an argument with a coworker; thus TTD compensation is not payable pursuant to R.C. 4123.56(F). Claimant appealed.

{¶ 14} 9. The commission refused further appeal in a February 14, 2023, order. Claimant filed a request for reconsideration, which the commission denied on March 22, 2023.

{¶ 15} 10. On April 7, 2023, claimant filed his petition for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 16} The magistrate recommends that this court deny claimant's petition for writ of mandamus.

{¶ 17} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 18} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 19} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of

employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 20} R.C. 4123.56, which was amended by H.B. No. 81, effective September 15, 2020, modified the prior version of R.C. 4123.56 by adding the following entirely new language pertaining to voluntary abandonment:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F).

{¶ 21} In the present case, claimant presents the following arguments: (1) the analysis under R.C. 4123.56(F) is whether the proximate cause of disability is the injured worker's allowed condition; (2) thus, TTD must be paid if the proximate cause of claimant's not working is the allowed condition in the claim; (3) *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, 10th Dist. No. 21AP-294, 2023-Ohio-633, is analogous to the present case; (4) claimant's disability resulting from his work injury was the proximate cause of his time out of work from August 25 through November 7, 2022; (5) Dr. Krupco's November 18, 2022, MEDCO-14 indicates claimant has physical restrictions related to the allowed conditions, and he cannot return to the full-duty job he held on the date of injury; (6) but for the broken chair and resulting rotator-cuff tear, claimant would have been able to work from August 25 through November 7, 2022; i.e., the rotator cuff tear and not the job termination was the proximate cause of his disability and time out of work; (7) the

employer offered no evidence to support a proper termination of claimant; and (8) the Supreme Court of Ohio in *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995), set forth factors to determine whether an employee was properly terminated, and there was no evidence here of any of those factors.

{¶ 22} Claimant asserts that *AutoZone* is analogous to the present case and controls. In *AutoZone,* the claimant was working as an assistant store manager for the employer when he sustained an injury. A workers' compensation claim was allowed, and the claimant was placed on light duty. The claimant was then involved in an argument with another employee and was terminated. The claimant filed a request for TTD compensation, which was denied by the employer. The claimant then underwent an approved shoulder surgery, and a physician issued MEDCO-14 forms indicating the claimant could not work until further evaluation. The DHO denied the claimant's request for TTD compensation after examining the details of the claimant's termination. After the claimant appealed, the SHO granted the claimant's request for TTD compensation, but only for the period between his surgery and the hearing with the SHO. In doing so, the SHO rejected the employer's argument that TTD compensation should be denied since the claimant had been terminated. Instead, the SHO determined, based on the fact the claimant was under restrictions due to the allowed conditions at the time of the termination and was completely removed from the workforce after the subsequent approved surgery (as evidenced by the MEDCO-14 forms), pursuant to R.C. 4123.56(F), the claimant was unable to work as a direct result of an impairment arising from the allowed injury from the date of the allowed surgery through the date of the hearing. In the employer's writ of mandamus action, the magistrate denied a writ, and this court denied the employer's subsequent objections.

{¶ 23} With regard to the first section of R.C. 4123.56(F), the employer in *AutoZone* argued the claimant was unable to work as a direct result of his prior job termination, not his impairment arising from the subsequent allowed surgery. This court addressed "direct result," as used in both the first and second sentences in R.C. 4123.56(F), as follows:

> Reading the ordinary meaning of "direct" within the context of the statute as a whole, R.C. 4123.56(F) requires a claimant's inability to work to stem immediately from an impairment arising from an injury or occupational disease.

> We decline to extrapolate an additional requirement in R.C. 4123.56(F) that a claimant prove he or she is unable to work only due to an impairment arising from an injury or occupational disease. Such a reading would in essence add words to the statute, which courts are not permitted to do. [*Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, ¶ 13]. Furthermore, the second sentence of R.C. 4123.56(F) shows the legislature contemplated that multiple "reasons" may contribute to a claimant being unable to work, and only when those reasons are "unrelated" to the workplace injury would TTD be inappropriate. R.C. 4123.56(F). To instead adopt the employer's position would, in essence, turn the court's gaze back to those facts surrounding why the claimant left the workforce preceding the period of TTD compensation— effectively resurrecting the voluntary abandonment analysis expressly superseded by the legislature.

*AutoZone* at ¶ 22. Thus, this court in *AutoZone* concluded the magistrate did not err in determining claimant was unable to work as a "direct" result of his workplace injury under R.C. 4123.56(F).

{¶ 24} The facts in *AutoZone* are inapposite to those here. In *AutoZone*, the injured worker was not working before an allowed surgery that rendered him temporarily and totally disabled. The worker applied for TTD compensation because he was unable to work in any capacity after the allowed surgery, a fact supported by the medical evidence. Although claimant in the present case was also not working at the time of the requested TTD compensation due to termination, the similarities between the two cases stop there. The period of requested TTD compensation here was not for the time claimant was unable to work in any capacity due to an allowed surgery. Instead, claimant requested TTD compensation soon after his termination. This key difference renders any direct comparison of the two cases untenable.

{¶ 25} Nevertheless, despite the factual differences between *AutoZone* and the present case, *AutoZone* does provide the relevant inquiries necessary to analyze the facts in the present case. As explained in *AutoZone*, R.C. 4123.56(F) requires a claimant's inability to work to stem immediately from an impairment arising from an injury or occupational disease, but there is no additional requirement in R.C. 4123.56(F) that a claimant prove he or she is unable to work only due to an impairment arising from an

injury or occupational disease. Thus, the relevant question here is whether claimant was unable to work from August 25 to November 7, 2022, as a result of his workplace injury. Although claimant points to Dr. Krupco's November 18, 2022, MEDCO-14 as evidence that his physical restrictions prevented his return to the full-duty job he held on the date of his injury, the SHO found in the January 25, 2023, decision that claimant was not working from August 25 through November 7, 2022, due to reasons other than this claim; i.e., based upon claimant's testimony at the hearing that he worked following the injury until he was terminated for an argument with a coworker. Apparently, the SHO was not persuaded by Dr. Krupco's MEDCO-14, and the magistrate finds there existed circumstances that support the SHO's refusal to rely upon Dr. Krupco's MEDCO-14. The facts that claimant had returned to work after the injury, and there was no evidence showing how or why his medical status and ability to work changed after his return or subsequent termination, supports the SHO's view that Dr. Krupco's opinion lacked reliability. Furthermore, although Dr. Krupco began treating claimant on August 25, 2022, he failed to certify TTD compensation until three months later in the November 18, 2022, MEDCO-14, and his notes during this period do not provide an opinion on work ability or any restrictions. Dr. Krupco also issued his certification after claimant was terminated from employment, and the SHO could have refused to rely upon the MEDCO-14 because it was incomplete and devoid of specificity to support TTD compensation.

{¶ 26} Therefore, the magistrate finds that claimant's circumstances do not fall within the purview of the first sentence in R.C. 4123.56(F) because there was insufficient persuasive evidence that claimant was unable to work as a direct result of an impairment arising from his workplace injury during the period of requested TTD compensation.

{¶ 27} Likewise, in considering the second sentence in R.C. 4123.56(F), it was not a surgery for an allowed condition, as in *AutoZone*, that rendered claimant unable to work in the present case. Instead, claimant had returned to his job after his injury but was terminated due to an argument. Although denying TTD compensation based solely on claimant's termination resembles the old voluntary-unemployment analysis, which was explicitly superseded by the amendment of R.C. 4123.56(F), the present case is different, in that there was also no reliable evidence to support a change in claimant's medical status or work ability to support Dr. Krupco's view that claimant was temporarily and totally

disabled. Neither Dr. Krupco's office notes or MEDCO-14 explain how or why claimant had become temporarily and totally disabled after he had returned to his employment without restrictions after the injury. *AutoZone* makes clear that the fact that an injured worker was not working prior to the claimed period of TTD does not automatically disqualify a claimant from receiving TTD compensation, and this court rejected the concept that an injured worker is not entitled to TTD compensation unless he is employed and actually suffered lost wages at the time of the claimed period of TTD; however, those are not the bases for the present determination. As explained above, the SHO's decision was based upon the lack of any persuasive evidence to support a conclusion that claimant was unable to work from August 25 to November 7, 2022, as the direct result of an impairment arising from an injury or occupational disease. For these reasons, claimant has failed to demonstrate a clear legal right to relief or a clear legal duty on the part of the commission to provide such relief.

{¶ 28} Accordingly, it is the magistrate's recommendation that this court should deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.